**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MICHELLE HUTCHINSON, as Personal Representative
of the Estate of Carol Luna,

    Plaintiff,

vs.                                                                                                  No. CIV 00-1337 MV/DJS

BOARD OF COUNTY COMMISSIONERS
OF TORRANCE COUNTY, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    This matter comes before the Court on Defendants Board of County Commissioners of Torrance County, Torrance County Sheriff, and Torrance County Sheriff's Department Motion to Dismiss Plaintiff's Complaint for Civil Rights Violations, filed December 14, 2000 **[Doc. No. 29]**; Defendants New Mexico State Police Officers Phillabaum, Christian, Mowduk, New Mexico State Police Communications Specialists Judy Aragon, Victor Vigil, and Lucy Williams Motion to Dismiss the Estate's Due Process Claim, filed December 20, 2000 **[Doc. No. 47]**; and Defendants Board of County Commissioners of Santa Fe County, Santa Fe County Sheriff and Santa Fe County Sheriff's Department Motion to Dismiss, filed November 15, 2000 **[Doc. No. 38]**.

    The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds that Defendants Board of County Commissioners of Torrance County, Torrance County Sheriff, and Torrance County Sheriff's Department (hereinafter "the Torrance County Defendants") Motion to Dismiss Plaintiff's Complaint for Civil Rights

Violations and Board of County Commissioners of Santa Fe County, Santa Fe County Sheriff and Santa Fe County Sheriff's Department (hereinafter "the Santa Fe County Defendants'") Motion to Dismiss are not well-taken and will be **DENIED**.  Defendants New Mexico State Police Officers Phillabaum, Christian, Mowduk, and New Mexico State Police Communications Specialists Judy Aragon, Victor Vigil, and Lucy Williams (hereinafter "the State Defendants") Motion to Dismiss the Estate's Due Process Claim will be **GRANTED in part**, as explained below.

## BACKGROUND

Defendants seek dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Therefore, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).  The well-pleaded facts, and reasonable inferences to be drawn therefrom, are as follows.

Carol Luna sustained escalating violence and dire threats of further violence at the hands of her ex-husband Richard Luna.  She obtained a restraining order against Mr. Luna in Santa Fe County, where she resided.  Because Mr. Luna lived in Moriarty, she arranged for service by the Torrance County Sheriff's Department.

On December 4, 1997, Ms. Luna reported to the Albuquerque Police Department that she was receiving threatening phone calls from Mr. Luna at work.  She also reported criminal damage to her car.  The Albuquerque Police were unable to locate any record of the restraining order, and

---

[1] The Torrance County Defendants have not specified the precise rule under which they have sought dismissal of Plaintiff's complaint.  It is clear from the content of the motion, however, that the Torrance County Defendants are seeking dismissal under Fed. R. Civ. P. 12(b)(6).

advised Ms. Luna to discuss the problem with Torrance County. Apparently, the restraining order had not yet been served on Mr. Luna. Ms. Luna then called the Torrance County Sheriff's Department but was not told why Mr. Luna had not yet been served the restraining order. Instead, she was advised to discuss the problem with either Santa Fe County or the State Police.

A few days later, Ms. Luna called the State Police, reporting to Defendant Judy Aragon that Mr. Luna was still contacting her at work, and was contacting the children at school, all in violation of the restraining order. Defendant Aragon told Ms. Luna that only a county sheriff's department could serve a restraining order and suggested that Ms. Luna contact the Albuquerque Police, as well as seek assistance from the supervisors at the various sheriff's offices. Sometime during this time period, Ms. Luna was asked not to return to work because Mr. Luna's harassment had become so threatening and disruptive that Ms. Luna's employer felt that Mr. Luna posed a danger to Ms. Luna's co-workers.

Defendant Phillabaum, a State Police Officer, contacted the Torrance County Sheriff's Department and was informed that Mr. Luna had not been personally served. However, he was told that the restraining order had been posted on Mr. Luna's door earlier that day. Defendant Phillabaum called Ms. Luna and reported this information to her, stating that she should call him again if Mr. Luna continued to make threats and that he would act on her behalf. Relying on this promise, Ms. Luna "stayed her course."

On December 11, 1997, Stephanie Luna[2] called the Torrance County Sheriff's Department to report Mr. Luna's threats. No officer was dispatched and no report was filed. Over the next

---

[2] Stephanie Luna's relationship to Carol and Richard Luna is not explained in the Complaint.

3

several days, Mr. Luna continued to harass Ms. Luna and her children. By this time, Ms. Luna had been permitted to return to work, and Mr. Luna continued to harass and threaten her at her workplace. An Albuquerque police officer attempted to call Mr. Luna at his workplace, but took no further action.

On December 17, 1997, Ms. Luna was again asked not to return to work. On the same day, she reported to the Santa Fe County Sheriff's Department that Mr. Luna had called her twenty-three times at home, making escalating threats of violence. A Santa Fe County police officer attempted to call Mr. Luna and was unable to reach him by telephone. The officer told Ms. Luna that he was unable to secure an address for Mr. Luna, although Ms. Luna had previously been told that a Torrance County officer had posted the restraining order on Mr. Luna's door. The Santa Fe County officer promised to initiate a "close patrol" on her house and took no further action. Four days later, Ms. Luna reported to the Santa Fe County Sheriff's Department that Mr. Luna had come to her home. The officer she spoke with told her that because he did not have a copy of the restraining order he could not do anything. Ms. Luna told him that if Mr. Luna was not served with the restraining order she "was going to end up dead."

On December 23, 1997, Ms. Luna spoke with Defendant Victor Vigil, a state police communications specialist. She told him that she had been gone from her house for four hours and that during that time period, Mr. Luna had left twelve threatening messages on her answering machine. Defendant Vigil told her that the police were busy with traffic accidents and that he would call her back. No one called her back. That day, Plaintiff Michelle Hutchinson[3] called the

---

[3]It appears from the allegations in the Complaint that Ms. Hutchinson is Mr. Luna's niece (the daughter of Mr. Luna's sister).

4

Santa Fe Sheriff's Department. She told an officer that she had been informed by a family member that Mr. Luna had obtained a pistol and intended to shoot Ms. Luna and the children. The officer told Ms. Hutchinson that he would not be able to reach Ms. Luna's house because of bad road conditions. Ms. Hutchinson drove to Ms. Luna's house from Albuquerque "without any problem."

The next day, December 24, 1997, Ms. Luna dialed 911, reaching the Bernalillo County Sheriff's Department. Bernalillo attempted to transfer the call to Santa Fe County, but the call was disconnected. Later that day, Ms. Luna called the Santa Fe Sheriff's Department directly, reporting that Mr. Luna had called her eighteen times throughout the night, threatening her with death. A Deputy told her that if she found out where Mr. Luna was, she should let them know. Ms. Luna then called the state police to report the death threats. Defendant Williams, a communications specialist, told her that all of the officers were out on the interstate dealing with snow. Defendant Williams advised Ms. Luna to call the county sheriff's department. Defendant Williams promised that Defendant Mowduk would call her. Relying on this promise, Ms. Luna waited by the phone. Officer Mowduk did not call.

Mr. Luna then called Ms. Luna. He told her that "her time was up" and that he intended to shoot her three children in front of her as a Christmas present, then shoot her in the legs. Ms. Luna called the Santa Fe Sheriff's Department and told an officer there that Richard Luna was on the way over to her house. Ten minutes later, Ms. Luna called 911 again and was put through to the Santa Fe County Sheriff's Department. An officer was dispatched. Mr. Luna then violently entered Ms. Luna's home. When the dispatched officer arrived at the door, he heard gunshots and Mr. Luna say, "I told you this would happen." Ms. Luna's three children had escaped out a

basement window when Mr. Luna broke in and had run across a field to a neighbor's house, where they made another 911 call. Ms. Luna died on the way to the hospital that night. On December 29, 1997, police officers executed a search warrant of Mr. Luna's home with no apparent difficulty locating his address.

Ms. Hutchinson, as Personal Representative of Ms. Luna's Estate, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 against the Torrance County Defendants; the Santa Fe County Defendants; and the State Defendants; as well as the Board of County Commissioners of Bernalillo County, the Bernalillo County Sheriff, and the Bernalillo County Sheriff's Department; and the City of Albuquerque and the Police Chief of the City of Albuquerque. In the Complaint, Plaintiff alleges that all of the Defendants violated Ms. Luna's substantive Due Process rights and her right to Equal Protection, in violation of the Fourteenth Amendment. The Torrance County Defendants and Santa Fe County Defendants have moved to dismiss both causes of action. The State Defendants have moved to dismiss only the substantive Due Process claim.

## STANDARD OF REVIEW

A court may not dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). In considering a Rule 12(b)(6) motion, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the Court to assume that a plaintiff "can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

## DISCUSSION

### A. Applicable Law

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds)). None of the Defendants dispute that they were acting under color of state law; the sole question, therefore, is whether Plaintiff alleges the violation of a right secured by the Constitution and laws of the United States.

### 1. Substantive Due Process

The state is not constitutionally obligated to protect its citizens from private violence. *See Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999) (citing

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195-197, (1989)).  State actors may generally only be held accountable under the Due Process Clause for their own actions.  *See id.*  There are two established exceptions to the general rule stated above: (1) the "special relationship" doctrine, and (2) the "danger creation" theory.  *See id.* (citing *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995)).  The parties agree that Plaintiff is basing her claim on the "danger creation" theory.  Therefore, the Court will address the standard that Plaintiff is required to meet in order to establish a cause of action under that theory;[4] the Court will not address the "special relationship" doctrine.

In order to succeed under the "danger creation" theory, plaintiff must demonstrate that: (1) Ms. Luna "was a member of a limited and specifically definable group"; (2) the defendants' conduct put her at "substantial risk of serious, immediate, and proximate harm"; (3) the risk was obvious or known; (4) the defendants acted recklessly in conscious disregard of that risk; (5) the defendants' conduct, when viewed in total, is conscience shocking; and (6) the defendants "created the danger or increased the plaintiff's vulnerability to the danger in some way."  *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001); *see also DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1235 (10th Cir. 2000) (quoting *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1262-63 (10th Cir. 1998)).

It is not enough for Plaintiff to show that the defendants "increased the danger of harm from third persons."  *Sutton*, 173 F.3d at 1238 (quoting *Uhlrig*, 64 F.3d at 573).  Rather, Plaintiff must demonstrate that Defendants "acted with the requisite degree of culpability."  *Id.*  To do so,

---

[4] As explained above, at this stage of litigation, Plaintiff is only required to allege facts which, if proven, would establish that this standard is satisfied.

Plaintiff "must demonstrate intentional or reckless, affirmative conduct on the part of [the defendants] which created the danger, coupled with 'a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* (quoting *Uhlrig*, 64 F.3d at 574).

### 2. Equal Protection

The Equal Protection Clause requires the government to treat similarly situated people alike. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Therefore, although there is no general constitutional right to police protection, the state may not discriminate in the provision of protective services. *See Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *see also Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 779 (8th Cir. 1994) (quoting *Deshaney*, 489 U.S. at 197 n. 3).

In general, a plaintiff in an equal protection action must demonstrate discriminatory intent. *See Watson*, 857 F.2d at 694. (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977)). It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor. *See id.* (citing *Village of Arlington Heights*, 429 U.S. at 265). Under the weight of established authority, a Plaintiff states a cause of action under the Equal Protection Clause by alleging that a governmental entity discriminates by failing to treat complaints of domestic abuse as seriously as complaints of nondomestic abuse. *See id.* at 696; *see also Ricketts*, 36 F.3d at 779; *Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1031 (3rd Cir. 1988).

### B.  The Torrance County Defendants

The Torrace County Defendants argue that Plaintiff's substantive Due Process claim must be dismissed because Plaintiff's allegations "rest on inaction by the Torrance County Defendants in failing to apprehend Mr. Luna."  Torrance County Defs.' Mem. at 4.  In other words, the Torrance County Defendants argue that Plaintiff has not sufficiently alleged facts that establish liability under the state-created danger theory because Plaintiff has not alleged that Defendants placed Ms. Luna in a worse position than she would have been in had they not acted at all.  *See id.*

The Torrance County Defendants also argue that both the substantive Due Process and the Equal Protection claims must be dismissed because Plaintiff has not alleged that the actions taken by the Torrance County Defendants, even if they did establish liability under the state-created danger theory, were taken pursuant to an official policy.[5]  Torrance County Defs.' Mem. at 7.  It is established that a "plaintiff suing a municipality under § 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.  *See Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)).  The Torrance County Defendants argue that Plaintiff has not established that a "municipal policy or custom was the moving force" behind any constitutional deprivation and that, therefore, Plaintiff has not sufficiently alleged facts that would establish municipal liability.

---

[5]Torrance County Defendants do not concede that any of the actions they took in connection with the events at issue rose to the level of a constitutional violation.  Torrance County Defs.' Mem. at 7 n.1.

10

The Court finds that the following allegations, if proven, would be sufficient to establish liability under the state-created danger theory. When she asked why Mr. Luna was not served with the restraining order, the Torrance County Defendants told Ms. Luna "to take it up with the Santa Fe County Sheriff's Department" and "to take it up with the State Police if no County Sheriff's [sic] would help." Compl. at ¶ 15. After failing to serve the restraining order, the Torrance County Defendants failed to respond to Ms. Luna's complaints that Mr. Luna was threatening her. Compl. at ¶ 19. The Torrance County Defendants had a street address for Mr. Luna, but failed to inform the Santa Fe County Sheriff's Department, which had issued the restraining order, of that address.

Defendants are correct that none of these actions taken in isolation would be sufficient to establish liability under § 1983. Alone, each action probably only rises to the level of negligence, which is unquestionably not actionable under § 1983. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).[6] However, Plaintiff alleges that these actions, considered collectively and in conjunction with the actions taken by the other governmental defendants, constitute "affirmative misconduct," which "created the danger and escalated the danger to Plaintiff's decedent, and caused Carol Luna her injuries and damages." Compl. at ¶ 33. Furthermore, Plainitff alleges that the Torrance County Defendants had notice that Mr. Luna "posed a dire threat" to Ms. Luna and to her children, that they "made promises, explicit and implicit, to act for

---

[6]The failure to serve a restraining order might, in light of what the Torrance County Defendants knew regarding the degree of violence being inflicted on Ms. Luna, rise to the level of recklessness. *See Freeman v. Ferguson*, 911 F.2d 52, 53-54 (8th Cir. 1990) (holding that city police department might be liable for "deliberately, indifferently, and intentionally" ignoring, refusing, and failing to take seriously a domestic violence victim's pleas for help and demands to the city to enforce a restraining order.)

her safety," and that they acted in "conscious disregard" of a "substantial risk of proximate, immediate and serious harm."  Compl. at ¶ 35.  These allegations, if proven, would establish that the six-factor test for establishing liability under the state-created danger theory is satisfied, that the Torrance County Defendants acted with the requisite degree of culpability, and that their conduct "is truly conscience shocking.'" *Sutton*, 173 F.3d at 1238 (quoting *Uhlrig*, 64 F.3d at 574).

The Court also finds that Plaintiff has advanced allegations sufficient to establish municipal liability under § 1983.  As noted above, a municipal defendant can be held liable under § 1983 if "a municipal policy or custom caused the constitutional violation."  *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 165 (1993).  To demonstrate the existence of a municipal policy, Plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of County Comm'rs of Byran County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).

As explained recently by our sister court in the Northern District of Illinois, "[a] municipality can violate an individual's constitutional rights in three ways: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policy making authority.'" *Didzerekis v. Stewart*, 41 F.Supp.2d 840, 844-45 (N.D. Ill. 1999) (quoting *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir.1994)).  Moreover, plaintiffs alleging municipal liability under § 1983 are "required to comply only with the conventional standards of notice pleading; they are not required

to meet any heightened pleading standard." *Id.* at 845 (internal citations omitted); *see also Leatherman*, 507 U.S. 163 at 165.

The complaint contains numerous allegations suggesting that the defendants were acting pursuant to a "widespread practice" when they engaged in the conduct giving rise to the substantive Due Process allegation; the Court has already recounted these allegations and declines to do so again here. The Court finds that Plaintiff's complaint, therefore, puts the Torrance County Defendants on notice of the facts that comprise her claim of municipal liability for a substantive Due Process violation. *Accord Didzerekis*, 41 F.Supp.2d at 845. No more is required at this stage.

In Count II, Plaintiff specifically alleges that "Defendants [sic] ongoing pattern of indifference and failure to coordinate between jurisdictions reveals a policy that discouraged arrest in domestic violence cases and denied or provided less police protection to victims of domestic violence than to victims of batteries by strangers." Compl. at 38. It is difficult to conceive of a more specific allegation of an express policy. A claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim-Pahani v. Los Angeles Police Dept.*, 839 F.3d 621, 624 (9th Cir. 1988) (internal quotations omitted), *cited with approval in Leatherman*, 507 U.S. at 165. Plaintiff's cause of action for equal protection, therefore, alleges municipal liability sufficient to withstand a motion to dismiss.

Drawing all reasonable inferences in favor of Plaintiff, as the Court is required to do in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court finds that the Torrance County Defendants have not shown that Plaintiff can prove no set of facts supporting

her claim that would entitle her to relief.  Accordingly, the Torrance County Defendants' Motion to Dismiss will be denied.

### C.  The Santa Fe County Defendants

The Santa Fe County Defendants argue that Plaintiff's substantive Due Process claim must be dismissed because Plaintiff is attempting to rely on state law in order to establish her federal constitutional claim.  Santa Fe County Defs.' Mem. at 2 n.1  The Santa Fe County Defendants also argue that the substantive Due Process claim must be dismissed because Plaintiff has not alleged facts that are sufficient to establish liability under the state-created danger theory.  *Id.* at 3-5.  They argue that Plaintiff's Equal Protection claim should be dismissed because it is "a blatant attempt to avoid the Supreme Court's holding that 'a State's failure to protect an individual against private violence' is not actionable under 42 U.S.C. § 1983."  *Id.* at 6 (quoting *DeShaney*, 489 U.S. at 197).  They also raise a number of factual disputes with respect to the Equal Protection claim.  *See id.* at 7-8.

With respect to the Santa Fe County Defendants' first argument, the Court finds that Plaintiff's reliance on state law is appropriate.  It is certainly true that a violation of a state law, without more, is insufficient to establish liability under § 1983.  *See, e.g., D.R. v. Middle Bucks Area Vocational Tecnhical Sch.*, 972 F.2d 1364, 1375-76 (3rd Cir. 1992).  As explained above, however, in order to establish a substantive Due Process violation based on the state-created danger theory, Plaintiff has the burden of showing that Defendants acted "with the requisite degree of culpability," i.e., she must establish "reckless, affirmative conduct on the part of" Defendants.  *Sutton*, 173 F.3d at 1238 (quoting *Uhlrig*, 64 F.3d at 574).  Plaintiff is not arguing that Defendants' alleged violation of state law establishes liability under § 1983; rather, she is

14

arguing that Defendants' alleged violation of state law establishes that they were acting recklessly when they consciously disregarded a substantial risk of immediate harm.

New Mexico law provides that a court "shall enter an order of protection" "upon finding that domestic abuse has occurred." N.M. STAT. ANN. § 40-13-5(A). "Domestic abuse" means "any incident by a household member against another household member resulting in: (1) physical harm; (2) severe emotional distress; (3) bodily injury or assault; (4) a threat causing imminent fear of bodily injury by any household member; (5) criminal trespass; (6) criminal damage to property; (7) repeatedly driving by a residence or work place; (8) telephone harassment; (9) stalking; (10) harassment; or (11) harm or threatened harm to children." N.M. STAT. ANN. § 40-13-2(C). Therefore, when they became aware that a restraining order had been issued, Defendants were on notice that Ms. Luna had been the victim of at least one of those acts.

A restraining order, once entered, "shall be personally served upon the respondent." N.M. STAT. ANN. § 40-13-6(A). A domestic abuse victim has a statutory right to seek assistance from a local law enforcement agency. N.M. STAT. ANN. § 40-13-7(A). A local law enforcement officer reponding to a request for assistance is required to "take whatever steps are reasonably necessary to protect the victim from further domestic abuse." N.M. STAT. ANN. § 40-13-B. The statute goes on to provide suggestions regarding what such steps might include. *See* N.M. STAT. ANN. § 40-13-7(B)(1)-(6). As explained above, a violation of these provisions alone would not establish liability under § 1983; it would, however, establish that the Santa Fe County Defendants acted with the degree of culpability necessary to demonstrate liability under the state-created danger theory.

The Court finds that Plaintiff's allegations of affirmative misconduct against the Santa Fe

15

County Defendants are scant. Nonetheless, the Court finds that the actions of the Santa Fe County Defendants, considered collectively and in conjunction with the actions of the other Defendants, are sufficient to state a cause of action under § 1983 for substantive Due Process and Equal Protection violations. For example, Plaintiff alleges that Ms. Luna reported to the Santa Fe County Sheriff's Department that Mr. Luna had called her twenty-three times in violation of the restraining order, and that the officer she spoke with told her he would initiate a "close patrol" of her house but otherwise took no action. Compl. at ¶ 21. Although the Torrance County Defendants had apparently already posted a copy of the restraining order on Mr. Luna's door, and therefore, presumably had an address for him, the Santa Fe County Defendants made no attempt to contact the Torrance County Sheriff's Department to ascertain that address. *Id.* The Santa Fe County Defendants also allegedly ignored several other requests for assistance. *See* Compl. at ¶¶ 22, 24, 26, 28. Moreover, Plaintiff has alleged facts which, if proven, would demonstrate that the Santa Fe County Defendants acted with the requisite degree of culpability. This is sufficient to set forth a cause of action for a substantive Due Process violation under established Tenth Circuit precedent. *See Currier*, 242 F.3d at 918.

      The Court does not find that Plaintiff's Equal Protection claim is a "blatant attempt to avoid" the Supreme Court's holding in *DeShaney*. As explained above, Plaintiff has alleged that all of the defendants, including the Santa Fe County Defendants, have violated the Equal Protection Clause by treating domestic assault cases differently than they treat nondomestic assault cases. Moreover, it has been clearly established in the Tenth and other Circuits that a plaintiff can set forth a cause of action under the Equal Protection Clause by making precisely this type of allegation. *See Watson*, 857 F.2d at 696; *Ricketts*, 36 F.3d at 779; *Hynson*, 864 F.2d at

1031. Accordingly, the Court finds that the Santa Fe County Defendants have not met their burden of establishing that plaintiff can prove no set of facts supporting her Equal Protection claim that would entitle her to relief.  *See H.J. Inc.*, 492 U.S. at 249-50.

Because the Court is obligated to construe the facts, and all reasonable inferences to be drawn therefrom, in the light most favorable to the Plaintiff, the Court declines the Santa County Defendants' invitation to construe the facts underlying the Equal Protection claim in its favor.  In fact, the Santa Fe County Defendants acknowledge that the facts must be construed in the light most favorable to Plaintiff, and state simply that if the Court denies the Motion to Dismiss, then it will reiterate its version of the facts in a Motion for Summary Judgment.  Santa Fe County Defs.' Mem. at 7 n.4.  The Court will not address this portion of Defendants' Motion, other than to note that it is appropriate to submit evidence in support of a Motion for Summary Judgment and that if Defendants do file such a motion, the Court will satisfy its obligation to construe the facts in the light most favorable to the nonmoving party in order to determine whether there is a genuine dispute of material fact and whether Defendants are entitled to judgment as a matter of law.  *See Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).  For all of the foregoing reasons, the Santa Fe County Defendants' Motion to Dismiss will be denied.

### D.  The State Defendants

The State Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's substantive Due Process claim.  As noted above, the State Defendants have not moved to dismiss Plaintiff's Equal Protection claim.  The State Defendants also note that there are no allegations stated against Defendant Christian.  The Court agrees that there are no allegations stated against Defendant Christian, with respect either to the Due Process claim or the Equal

Protection claim. Therefore, all of the claims against Defendant Christian will be dismissed.[7]

"Qualified immunity protects government officials from individual liability in a § 1983 action unless the officials violated clearly established constitutional rights. *See Radecki v. Barela*, 146 F.3d 1227, 1228 (10th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat a qualified immunity defense, a plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right; and (2) that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *See id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)). In order to show that the law was "clearly established," the plaintiff is not required to present a factually identical case. *Sutton*, 173 F.3d at 1241. Rather, the plaintiff need only show that the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1278 (10th Cir. 1998)).

The Court finds that at this time, the State Defendants have not demonstrated that they are entitled to qualified immunity with respect to Plaintiff's substantive Due Process claim. As explained in detail above, Plaintiff has stated a cause of action under the Fourteenth Amendment's Due Process Clause because Plaintiff has alleged facts which, if proven, would establish that that the State Defendants' conduct "created the danger or increased the plaintiff's vulnerability to the danger" and that they acted recklessly in conscious disregard of an obvious or known risk of

---

[7]As noted, the State Defendants move for dismissal only of the substantive Due Process claim. Nonetheless, the Court finds that there are no allegations stated against Defendant with respect to either claim. Therefore, the Court finds that it would be a waste of judicial resources to maintain Christian as a defendant.

serious, immediate, and proximate harm.[8]  *SeeCurrier*, 242 F.3d at 918.  These allegations, if proven, would establish liability under the state-created danger theory.

Defendants contend that even if these allegations establish that the existence of a constitutional violation, they are entitled to qualified immunity because the law was not "clearly established" at the time the events in question occurred.  The Court finds that the law regarding the state-created danger doctrine was clearly established at the time of the events in question.  The Tenth Circuit has, in fact, already ruled that the law was clearly established as of December 1994.  *See Armijo*, 159 F.3d at 1262.  Defendant correctly notes that *Armijo* itself was decided in 1998, after Ms. Luna's death.  Nonetheless, the Tenth Circuit in that case rejected a claim of qualified immunity because it specifically found that "danger creation jurisprudence was clearly established as a matter of law at the time of the conduct here at issue," i.e., in December 1994. *Id.*  If the "contours" of the right had been clearly established by December 1994, then they must have been clearly established as of December 1997.[9]  Accordingly, the State Defendants' Motion to Dismiss will be denied as to all State Defendants other than Defendant Christian.

---

[8]Specifically with respect to the State Defendants, Plaintiff alleges that the State Defendants did nothing to assist Ms. Luna the first time she sought their assistance.  Compl. at ¶¶ 16-17.  She also alleges that the Defendant Phillabaum instructed her to call again if Mr. Luna made any additional threats and promised that he would act on her behalf, a promise on which she relied by staying in her home.  Compl. at ¶ 18.  She alleges further that Defendant Vigil, after stating that nothing could be done because all of the state police were busy with traffic accidents, told her that he would have someone call her back and that no one did.  Compl. at ¶ 23.

[9]That *Armijo* is not factually identical to the case at bar does not matter.  As explained, Plaintiff is not required to identify a factually identical case.  In any event, *Watson*, where the Tenth Circuit expressed its concern that local police departments handle domestic abuse cases appropriately, was decided in 1988, nine years prior to Ms. Luna's death.  *See Watson v. City of Kansas City, Kan.*, 857 F.2d 690 (10th Cir. 1988).

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Torrance County Defendants' Motion to Dismiss **[Doc. No. 29]** is hereby **DENIED**; the Santa Fe County Defendants' Motion to Dismiss **[Doc. No. 38]** is hereby **DENIED**; and the State Defendants' Motion to Dismiss the Substantive Due Process Claim is hereby **GRANTED** as to Defendant Christian and **DENIED** as to all other State Defendants. All of the claims against Defendant Christian are hereby **DISMISSED**.

_____
MARTHA VAZQUEZ
United States District Judge

Attorney for Plaintiffs
    Brad D. Hall

Attorney for Defendants
    John E. DuBois & Richard A. Sandoval
    Michael Dickman
    Elizabeth L. German